OPINION OF THE COURT
 

 SLOVITER, Circuit Judge.
 

 Appellants Deborah and Michael Ma-dera (the Maderas) appeal the District Court’s affirmance of the Bankruptcy Court’s grant of summary judgment in favor of Appellees, Ameriquest Mortgage Company and AMC Mortgage Services, Incorporated (“Ameriquest” and “AMC,” respectively). The Maderas challenge the Bankruptcy Court’s sua sponte ruling that it lacked jurisdiction to review their rescission claims because of the
 
 Rooker-Feld-man
 
 doctrine, its dismissal of their damages claim under the Truth in Lending Act (“TILA”), and its denial of the Maderas’ motion for leave to amend their complaint, all of which were affirmed by the District Court.
 
 [1]
 

 I.
 

 The Maderas are co-owners of real property located in Warminster, Pennsylvania. In January 2005, they obtained a loan from Option One Mortgage Company, secured by a mortgage on that property (the “Option One loan”). They used this loan to pay off a prior mortgage and to help finance their son’s college tuition. After making one payment on that mortgage, they defaulted.
 

 In June 2005, less than six months later, they entered into another loan transaction, this time with Ameriquest (the “Ameri-quest loan”), again secured by a mortgage on their home. They used the Ameriquest loan to repay the Option One loan.
 

 The Maderas made only one payment under the Ameriquest loan before defaulting, and in March 2006, Deutsche Bank National Trust Company, as assignee of the loan, initiated foreclosure proceedings in the Court of Common Pleas of Bucks County. Although the Maderas contend that they filed a pro se Answer to the Complaint seeking foreclosure, the Court of Common Pleas entered a default foreclosure judgment against them in May 2006.
 
 [2]
 

 
 *231
 
 Deborah Madera then filed for Chapter 13 bankruptcy protection on July 19, 2006. Moreover, in August 2006, the Maderas instituted the first of two adversary actions in the Bankruptcy Court against Am-eriquest
 
 (Madera
 
 I).
 

 The Maderas raised four claims. As pertinent to this appeal, they alleged that Ameriquest failed to accurately disclose the terms of the Ameriquest loan as required under TILA, 15 U.S.C. § 1601,
 
 et seq.,
 
 because, they argue, the title insurance charges were excessive and this overcharge should have been disclosed as a “finance charge.” Based on TILA, they sought rescission of the Ameriquest loan as well as damages.
 
 [3]
 

 After discovery, Ameriquest filed its summary judgment motion, after which the Maderas filed a motion for leave to amend their complaint.
 
 [4]
 
 In November 2006, the Bankruptcy Court held a hearing on Ameriquest’s summary judgment motion and the Maderas’ motion to amend. At that hearing, the Bankruptcy Court orally denied the motion to amend. In February 2007, the Bankruptcy Court filed a Memorandum Opinion and Order granting Ameriquest’s summary judgment motion and reiterating its denial of the Ma-deras’ motion to amend.
 
 [5]
 

 The Bankruptcy Court reasoned that the
 
 Rooker-Feldman
 
 doctrine barred its jurisdiction over the Maderas’ claims for rescission because rescinding the loan would invalidate the aforementioned foreclosure judgment entered by the Court of Common Pleas. In addition, the Bankruptcy Court dismissed the Maderas’ TILA claim for damages regarding Ameri-quest’s failure to disclose title insurance fees, finding that the Maderas presented insufficient evidence to prove they were entitled to a lower rate because they had not shown that they obtained prior title insurance in connection with the Option One loan, or that Ameriquest knew or should have known of any such prior title insurance. The Bankruptcy Court also explained that it had denied the motion to amend on the ground that it was untimely, futile, and would unduly prejudice Ameri-quest and AMC.
 

 The Maderas filed a Motion Requesting Reconsideration of the Memorandum Opinion and Order, which was denied. On
 
 *232
 
 appeal, the District Court affirmed the Bankruptcy Court’s grant of summary judgment for Ameriquest, its denial of the Maderas’ motion to amend, and its order denying reconsideration, adopting and extending the Bankruptcy Court’s reasoning.
 

 II.
 

 Before us, the Maderas first challenge the conclusion of the Bankruptcy and District Courts that they lacked subject-matter jurisdiction under the
 
 Rooker-Feldman
 
 doctrine to hear the Maderas’ claims seeking rescission.
 
 See District of Columbia Court of Appeals v. Feldman,
 
 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983),
 
 and Rooker v. Fidelity Trust Co.,
 
 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The
 
 Rooker-Feldman
 
 doctrine precludes lower federal courts “from exercising appellate jurisdiction over final state-court judgments” because such appellate jurisdiction rests solely with the United States Supreme Court.
 
 See Lance v. Dennis,
 
 546 U.S. 459, 463, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006). We have held that this doctrine applies equally to federal bankruptcy courts.
 
 See In re Knapper,
 
 407 F.3d 573, 582 (3d Cir.2005).
 

 The
 
 Rooker-Feldman
 
 doctrine is implicated when, “in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual.”
 
 FOCUS v. Allegheny County Court of Common Pleas,
 
 75 F.3d 834, 840 (3d Cir.1996). Accordingly, a claim is barred by
 
 Rooker-Feldman
 
 under two circumstances: (1) “if the federal claim was actually litigated in state court prior to the filing of the federal action” or (2) “if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong.”
 
 In re Knapper,
 
 407 F.3d at 580.
 

 Moreover, a federal claim is “inextricably intertwined” with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court’s judgment.
 
 Id.
 
 at 581 (quoting
 
 Walker v. Horn,
 
 385 F.3d 321, 330 (3d Cir.2004)).
 

 The Bankruptcy and District Courts both held that
 
 Rooker-Feldman
 
 precluded their jurisdiction over the Ma-deras’ rescission claim because that claim was inextricably intertwined with the Court of Common Pleas’ foreclosure judgment. They reasoned that granting rescission would amount to finding that no valid mortgage existed, which would negate the foreclosure judgment, as a “mortgage foreclosure action depends upon the existence of a valid mortgage.” App. at 24. We agree. Indeed, a favorable decision for the Maderas in the federal courts would prevent the Court of Common Pleas from enforcing its order to foreclose the mortgage.
 
 See In re Knapper,
 
 407 F.3d at 581
 
 (“Rooker-Feldman
 
 does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders.”) (quoting
 
 Walker,
 
 385 F.3d at 330).
 

 The Maderas next contend that the Bankruptcy and District Courts were incorrect in rejecting their TILA claim seeking damages for Ameriquest’s failure to disclose the title insurance charge, which was set at the “basic rate,” rather than the lower “refinance rate.”
 

 The Bankruptcy Court granted summary judgment against the Maderas on their TILA damages claim on the ground that they failed to create a genuine issue of
 
 *233
 
 material fact as to whether they had prior title insurance in connection with the Option One loan. We conclude that was an adequate basis for the Bankruptcy Court’s grant of summary judgment.
 

 TILA requires certain disclosures of credit terms so that customers may compare the various terms available to them and avoid the uninformed use of credit.
 
 See, e.g.,
 
 15 U.S.C. §§ 1602(u), 1638(a). One fee subject to disclosure under TILA is the “finance charge” — the sum of all those charges “payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit.” 15 U.S.C. § 1605(a).
 

 The statute expressly exempts title insurance fees from the definition of “finance charge.” 15 U.S.C. § 1605(e)(1). The regulations interpreting TILA, however, mandate that title insurance costs are to be treated as finance charges if they are not “bona fide and reasonable in amount.” 12 C.F.R. § 226.4(c)(7). Put another way, under the regulations, title insurance fees must be disclosed under TILA to the extent they are not “reasonable in amount.” Ameriquest concedes that it did not disclose title insurance charges in the loan agreement, but it argues that it was not obligated to do so because the Maderas did not put Ameriquest on actual or constructive notice of their entitlement to a lower rate prior to or at closing.
 
 [6]
 

 The problem is not that the Ma-deras failed to put Ameriquest on notice of their eligibility for a lower rate. Rather, as the Bankruptcy Court found, it is that they failed to create a question of fact as to whether they had indeed purchased title insurance in association with the Option One loan.
 

 The Maderas argue that TILA does not place a burden on borrowers to notify lenders of eligibility for reduced title insurance rates, but rather that TILA simply requires the lender to disclose title insurance fees if the amount charged is higher than it should be under the TIR-BOP Manual. The Maderas assert that the disclosure provision of TILA imposes strict liability, requiring the lender to disclose any excessive title insurance charge even when the lender has neither actual nor constructive notice of the borrower’s eligibility for the lower rate.
 

 Assuming arguendo that this is an accurate view of the law, the grant of summary judgment was proper. Irrespective of which party bears notice burdens under TILA, the Maderas were required to create a question of fact that would allow a reasonable jury to find in their favor, i.e., that under the TIRBOP Manual they were in fact entitled to receive the refinance rate.
 
 See
 
 Fed.R.Civ.P. 56(e)(2).
 

 The Maderas failed to provide evidence of the existence of prior title insurance associated with the Option One loan, apparently because, even at the time of summary judgment, they were unaware that they had purchased such insurance. For example, when asked at deposition whether she was issued a title insurance policy in connection with the Option One loan, Mrs. Madera said, “I don’t know.” App. at 146. As stated by the Bankruptcy Court, “Not
 
 *234
 
 only did [the Maderas] fail to retain their copies of documentation of that relatively recent transaction, but it does not appear that they made any effort to obtain them for this litigation.” App. at 63.
 

 After the Bankruptcy Court issued its Memorandum Opinion, the Maderas did attach to their appellate brief in the District Court a settlement sheet which showed that they had purchased title insurance in association with the Option One loan. However, because it was not “made a part of the appellate record by the bankruptcy court” and because “attaching a document to a brief does not make it part of the record,” the District Court chose to ignore this new evidence. App. at 4. This was not error.
 
 See In re Foust,
 
 52 F.3d 766, 768 (8th Cir.1995) (holding that district court erred by supplementing the bankruptcy court’s record with new evidence);
 
 see also In re Colorado Corp.,
 
 531 F.2d 463, 467 (10th Cir.1976) (“It is clear that the district court cannot receive evidence when reviewing a finding or an order by the bankruptcy judge.”).
 

 We also conclude that the Bankruptcy Court did not abuse its discretion in denying the Maderas’ motion to amend. Courts may deny a motion to amend if “a plaintiffs delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party.”
 
 Cureton v. Nat’l Collegiate Athletic Ass’n,
 
 252 F.3d 267, 273 (3d Cir.2001). Coming as it did after the parties had completed discovery, and after the deadline by which time all pretrial motions were due, the Maderas’ motion to amend was untimely. The claims contained in the proposed Amended Complaint are not based on evidence that came to light after discovery. On the contrary, the Maderas simply failed to assert these claims before Ameriquest’s summary judgment motion was filed.
 

 Granting the motion to amend would have resulted in prejudice to Ameriquest by requiring it to reopen discovery and respond to new legal theories. As the District Court noted, Ameriquest would have to depose the Maderas again, “incur additional costs in preparing for a new trial based on new theories of liability, as well as prepare any appropriate motions, briefs and memoranda.” App. at 35.
 

 Lastly, amending the complaint would be futile, as the proposed Amended Complaint sought to press the exact claims the Maderas asserted in
 
 Madera II,
 
 in which Ameriquest and AMC prevailed at summary judgment. The Bankruptcy Court thus did not abuse its discretion in denying the Maderas’ motion to amend, and the District Court was correct to affirm that decision.
 

 III.
 

 For the above-stated reasons, we will affirm the District Court’s affirmance of the Bankruptcy Court’s grant of summary judgment to Ameriquest and its denial of the Maderas’ motion to amend.
 

 [1]
 

 . The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 157(b). The District Court had jurisdiction pursuant to 28 U.S.C. § 158(a)(1). This court has jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291. We review the grant of summary judgment de novo. We review the decision to deny the Maderas’ motion to amend their complaint for abuse of discretion.
 

 [2]
 

 . The Maderas assert that the Court of Common Pleas failed to correctly docket their Answer, the proper filing of which would
 
 *231
 
 have forestalled the default and foreclosure judgments.
 

 [3]
 

 . In
 
 Madera I,
 
 the Maderas also alleged that Ameriquest violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601
 
 et seq.
 
 (“RESPA”), by failing to respond to their "qualified written request” for information about the loan. App. at 48. For this alleged violation, the Maderas sought damages and costs. The Complaint also included an allegation that Ameriquest violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691e
 
 et seq.,
 
 and sought damages and costs. These claims are not at issue on appeal.
 

 [4]
 

 . In the proposed Amended Complaint, the Maderas sought to withdraw their RESPA claim against Ameriquest, and assert it instead against AMC. In addition, the proposed Amended Complaint asserted another TILA violation against Ameriquest, as well as a violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, 73 Pa. Cons.Stat. §§ 201-2(4) and 201-7.
 

 [5]
 

 .In response, the Maderas filed a second adversary action against Ameriquest and AMC,
 
 (Madera II),
 
 in which they sought to assert the very legal theories they had included in the proposed Amended Complaint.
 

 The issues the Maderas raise on appeal, however, relate only to the Bankruptcy Court’s grant and the District Court’s affir-mance of Ameriquest's summary judgment motion in response to
 
 Madera I,
 
 and the lower courts' denial of the motion to amend. Moreover, it is clear that the Maderas' “claim against Appellee AMC has been resolved.” Appellee’s Br. at 8. AMC's sole interest as appellee, therefore, relates to our review of the Maderas’ motion to amend.
 

 [6]
 

 . The parties agree that the Manual of Title Insurance Rating Bureau of Pennsylvania ("TIRBOP Manual”) establishes prevailing, i.e., "reasonable,” rates for title insurance in Pennsylvania. The TIRBOP Manual provides that a borrower with a prior mortgage is entitled to the "refinance rate” when three conditions are satisfied: (1) the prior mortgage must have been insured within three years of refinancing; (2) the premises must be identical to that which was previously insured; and (3) there must be no change in the fee simple ownership.