In re Glenn M. CALABRIA and Tommi
M. Calabria, Debtors.

Glenn M. Calabria and Tommi
M. Calabria, Plaintiffs,

v.

CIT Consumer Group;  Bank of New
York;  and Citifinancial, Inc.,
Defendants.

Bankruptcy No. 07–24252JAD.
Adversary No. 08–02029JAD.

United States Bankruptcy Court,
W.D. Pennsylvania.

Nov. 17, 2009.

John C. Brzustowicz, Marjorie Marotta Malkin, Brzustowicz & Marotta–Malkin PC, McMurray, PA, for Plaintiffs.

CitiFinancial Inc., Pro se.

Gary J. Gaertner, Phelan Hallinan Schmieg LLP, Lauren R. Berschler, Wilentz, Goldman & Spitzer, Pittsburgh, PA,

Jonathan J. Bart, Wilentz Goldman & Spitzer, P.A., Philadelphia, PA, for Defendants.

## MEMORANDUM OPINION

JEFFERY A. DELLER, Bankruptcy Judge.

By this adversary proceeding, the Debtors' challenge of the lien position of three defendants. Pending before the Court is the Bank of New York's *Motion to Dismiss the Debtors' Complaint.* For the reasons stated below, the *Motion to Dismiss* will be granted and this adversary proceeding shall be dismissed.

### I.

The Debtors, Glenn and Tommi Calabria, own an interest in certain real estate, including their residence at 93 Meadowbrook, Eighty–Four, Pennsylvania and a parcel of land located at 85 Meadowbrook, Eighty–Four, Pennsylvania (collectively the "Real Property"). The Bank of New York ("BNY") is a creditor of the Debtors and purportedly asserts a lien interest against some or all of the aforementioned Real Property.

On May 10, 2002, the Debtors executed two notes and mortgages in favor of CIT Consumer Finance ("CIT"). The second mortgage executed in connection therewith listed 85 Meadowbrook Road as the address of the collateral, but allegedly, "reference[s] the wrong address or contains[s] no legal description in the recorded security instruments." *See* (Dkt.# 1, Adv. No. 08–02029JAD, ¶ 8). This second mortgage was then subsequently assigned by CIT to Countrywide Home Loans in September of 2005, and was then assigned again in November of 2005, to its current holder, BNY, as Trustee.

On April 15, 2005 a default judgment in mortgage foreclosure was entered on the

second mortgage by the Court of Common Pleas of Washington County, ("the State Court"). (Dkt. # 114, Adv. No. 08–02029JAD, Exhibit C).

After the entry of the default judgment, the Debtors filed a chapter 7 bankruptcy petition on April 28, 2005 and disclosed the default judgment on Schedule D of their filing. The chapter 7 filing stayed execution of the foreclosure judgment.

In the chapter 7 bankruptcy case, BNY moved for relief from stay to exercise its non-bankruptcy rights with respect to its collateral. The Debtors opposed BNY's motion, contending that BNY's lien position is defective. Ultimately, on June 13, 2006, limited relief from stay was granted permitting BNY to proceed with a state court action "to resolve any outstanding title issue(s) which may exist with regard to the recorded mortgage on said property and the legal description attached, or which should have been attached. . . ." (*See* Dkt. # 70; Bankruptcy No. 05–25453–MBM). After the June 13, 2006 order of Judge McCullough was entered, no action was taken by either party. Thereafter, the chapter 7 trustee filed a *Report of No Distribution* on January 23, 2007, a discharge was entered, and the chapter 7 case was closed February 26, 2007.

On June 15, 2007, BNY presented a *Motion for Reassessment of Damages* in the state court foreclosure case. No response was filed by the Debtors, and the Court of Common Pleas of Washington County granted the motion, directing the prothonotary to reassess damages against the Debtors in the amount of $104,459.09. (Dkt. # 114, Adv. No. 08–02029JAD, Exhibit D).

The Debtors filed this chapter 13 bankruptcy case on July 2, 2007. BNY filed a secured claim with this Court in the amount of $104,459.09. The Debtors then filed this adversary proceeding against the Defendants [1] on January 22, 2008. The Debtors' Complaint seeks to strike BNY's secured claim and requests this Court order the Recorder of Deeds in Washington County to strike BNY's mortgage as well.

In response to the Complaint, Defendant, BNY, filed a *Motion to Dismiss* on April 14, 2008. The Debtors then filed timely responses. After several failed attempts at settlement, a hearing was held on July 1, 2009. Following the filing of supplemental briefs by both parties, which briefing was completed on September 29, 2009, this Court took the matter under advisement. This matter is now ripe for decision.

## II.

■ In support of its *Motion to Dismiss*, BNY presents two primary arguments for dismissal.[2] First, BNY asserts

---

1. BNY is one of three Defendants named in the Debtors' Complaint.

2. In their original brief, BNY asserted three grounds in support of its *Motion to Dismiss*. The first ground attacked the merits of the Debtors' Complaint which would only be appropriately reached if this Court determined it maintained subject matter jurisdiction over the Complaint and review was not barred by *res judicata*. In the second ground, BNY joined in the defenses of CIT Consumer Group ("CIT"), a co-defendant named in the Debtors' Complaint. In the Court's hearing of September 9, 2008 the Court denied CIT's Motion to Dismiss. *See* (Audio Recording of Hearing 9/9/2008 @ 1:30 pm (1:45:08–1:52:39) Adv. No. 08–02029JAD). As a result of this Court's denial of CIT's Motion the arguments as adopted by BNY are moot. BNY's final ground insisted the Debtors did not have standing to avoid the "unperfected" mortgage. The Debtors do not respond to this issue of standing-and BNY has not challenged the Debtors' standing in any subsequent hearing or brief. As a result this Court can only assume BNY has acquiesced to the Debtors' standing in this matter. Insofar as

the doctrine of *res judicata* precludes the Debtors from re-litigating the judgment in mortgage foreclosure entered by the Court of Common Pleas of Washington County. As a result, BNY argues that dismissal of this adversary proceeding is appropriate pursuant to Fed.R.Civ.P. 12(b)(6).[3] Second, BNY insists the entry of the state court judgment prevents this Court from obtaining subject-matter jurisdiction over the Debtors' Complaint pursuant to the *Rooker–Feldman* doctrine. In this regard, BNY argues that dismissal of this adversary proceeding is appropriate pursuant to Fed.R.Civ.P. 12(b)(1).

In deciding a Motion to dismiss under Fed.R.Civ.P. 12(b)(1), challenges as to "subject matter jurisdiction may be either 'facial' or 'factual.'" *Turicentro S.A. v. Am. Airlines, Inc.,* 303 F.3d 293, 300 n. 4 (3d Cir.2002). BNY issues a facial attack by contesting the sufficiency of the Debtors' Complaint.[4] *Id.* When a movant presents a facial attack under 12(b)(1) the pleading's, "allegations are taken as true and construed in a light most favorable to

the complainant." *Roush v. Horner,* 2008 WL 189556, *4 (W.D.Pa. Jan.18, 2008) (*citing Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Conversely, when confronted with a motion to dismiss for failure to state a claim, the Supreme Court has recently defined a higher pleading standard. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir.2009). Under the revised test a Complaint will only survive dismissal under Fed. R.Civ.P. 12(b)(6) if, "the complaint contains sufficient jurisdictional facts to state a claim which is 'plausible on its face' and raises a right to relief 'above the speculative level.'" *Bushnell, Inc. v. Brunton Co.,* 659 F.Supp.2d 1150, 1157, 2009 WL 2905753, *3 (D.Kan.2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929, (2007)).

## A.

The *Rooker–Feldman* doctrine[5] states that federal courts, other than the

---

this Court is required to independently evaluate the standing of the parties, *see National Organization For Women, Inc. v. Scheidler,* 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994), it appears to this Court that the Debtors' have standing pursuant to 11 U.S.C. § 522(h). Specifically, Section 522(h) of the Bankruptcy Code allows the debtor to stand in the position of the trustee to claim protections only the trustee would normally be empowered to assert. 11 U.S.C. § 522(h). One of these protections is the ability to avoid liens that, "according to state law, have not been properly perfected by the time the debtor has commenced the bankruptcy proceeding." *McLean v. Philadelphia, Water Revenue Bureau,* 891 F.2d 474, 476 (3d Cir.1989).

3. Fed.R.Civ.P. 12(b)-(h) is incorporated in Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

4. While the default judgment supporting the challenge to this Court's jurisdiction is not explicitly mentioned in the Complaint, the parties do not contest a default judgment was

entered and the Debtors implicitly refer to it in their Complaint at ¶ 6, which incorporates the entire docket from the Debtors' prior chapter 7 case. *See* (Dkt.# 1, Adv. No. 07–02029, ¶ 6). Where the fact in question is never genuinely disputed, and is implicitly admitted, jurisdictional challenges are considered "essentially facial." *See, Faust v. Deutsche Bank Nat'l Trust Co. (In re Faust),* 353 B.R. 94, 99 (Bankr.E.D.Pa.2006).

5. The "Rooker–Feldman" doctrine is named for two cases; *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *Rooker* held that hearing direct appeals from state courts is beyond the original jurisdiction of federal courts and lies exclusively in the Supreme Court. *See Rooker,* 263 U.S. at 415–16, 44 S.Ct. 149. *Feldman* held that the jurisdictional bar in *Rooker* applies to claims that are "inextricably intertwined" with those decided in state court. *See Feldman,* 460 U.S. at 486–

U.S. Supreme Court, lack subject matter jurisdiction to review judgments entered by state courts. *Randall v. Bank One Nat'l Ass'n,* 358 B.R. 145, 153 (Bankr. E.D.Pa.2006). Simply stated, the *Rooker–Feldman* doctrine prevents federal court plaintiffs from seeking relief that, if granted, would negate or reverse a state court judgment. *Knapper v. Bankers Trust Co.,* 407 F.3d 573, 580 (3d Cir.2005).

The jurisdictional limitations imposed by *Rooker–Feldman* apply not only to state court judgments entered following a trial on the merits, but also to default judgments. *See e.g., Knapper v. Bankers Trust Co., supra; In re Stuart,* 367 B.R. 541 (Bankr.E.D.Pa.2007); and *Holler v. Fairbanks Capital Corp. Serv. Ctr. (In re Holler),* 342 B.R. 212 (Bankr.W.D.Pa. 2006). Further, *Rooker–Feldman* applies to decrees of Pennsylvania's Supreme Court as well as to final decisions rendered by a state's intermediate appellate court and its respective trial court. *Knapper,* 407 F.3d at 580. Finally, the *Rooker–Feldman* doctrine continues to apply even if a plaintiff's claim, "is cloaked in the guise of an adversary proceeding in bankruptcy court." *Id.*

A claim is barred under *Rooker–Feldman* if either the claim asserted in Federal Court was "actually litigated" in state court prior to the filing of the federal action; or, alternatively, if the claim is "inextricably intertwined" with the state court adjudication. *Id.*

With these standards in mind, BNY appears to contend that the Debtors' claims are "inextricably intertwined" with the state court judgment entered against the Debtors when the undisputed facts clearly indicate that BNY took default judgments in both the original action in mortgage foreclosure as well as BNY's motion for reassessment of damages. *See* (Dkt. # 114, Adv. No. 08–02029JAD, Exhibits C and D).

### B.

In *Knapper v. Bankers Trust Co.,* the Third Circuit Court of Appeals stated that a cause of action is deemed to be "inextricably intertwined" with a state court judgment when:

> (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment. . . .

*Knapper,* 407 F.3d at 581 (*quoting Walker v. Horn,* 385 F.3d 321, 330 (3d Cir.2004)). These standards appear to be met in this case.

In their Complaint, the Debtors insist the Defendants hold no cognizable lien against the Real Property because the recorded mortgages at issue allegedly, "reference the wrong address or contain no legal description in the recorded security instruments." *See* (Dkt.# 1, Adv. No. 08–02029JAD, ¶ 8). As a result, the Debtors request this Court strike BNY's secured claim.

Pennsylvania law requires that a valid mortgage must, "describe the property sufficiently to enable it to be located and identified." 7 Stephanie A. Giggetts, *Summary of Pennsylvania Jurisprudence* § 21:26 (2d ed.2009). In Pennsylvania, actions in mortgage foreclosure are dependant on the existence of a valid mortgage. *Randall,* 358 B.R. at 158. Without a valid

87, 103 S.Ct. 1303. *See also Gruntz v. County of Los Angeles (In re Gruntz),* 202 F.3d 1074, 1078 n. 1 (9th Cir.2000).

mortgage, there is simply nothing to fore-close upon.

In light of the preceding requirements under applicable law with respect to mortgages, any finding by this Court that the mortgage instrument at issue is defective would be tantamount to this Court concluding that the State Court judgments were "erroneously entered." Further, the Debtors' Complaint expressly requests this Court strike BNY's secured claim and issue an order to the State Court requesting it strike the judgment in mortgage foreclosure. If this Court were to grant the requested relief, it clearly would have the effect of negating the State Court judgment.[6]

Under these circumstances, this Court concludes that the affirmative claim asserted by the Debtors' Complaint is in-fact "inextricably intertwined" with the State Court judgment rendered against them. In this instance Plaintiffs are requesting, "a federal court do precisely what *Rooker–Feldman* prohibits: to undo the effect of the state court judgment." *Randall,* 358 B.R. at 158 (*citing Crutchfield v. Countrywide Home Loans,* 389 F.3d 1144, 1148 (10th Cir.2004)). Therefore, this Court does not maintain subject-matter jurisdiction to adjudicate the Debtors' Complaint against BNY pursuant to the *Rooker–Feldman* doctrine.

**C.**

The Court does recognize that the Debtors insist the *Rooker–Feldman* doctrine does not apply as this Court maintains exclusive *in rem* jurisdiction over the Debtors' property pursuant to 28 U.S.C. § 1334.[7] (Dkt.# 117, Adv. No. 08–02029JAD, 2). In support of their assertion Debtors cite three cases where *Rooker–Feldman* was found not to bar district court review. *See Gruntz v. County of Los Angeles,* 202 F.3d 1074 (9th Cir.2000); *In re Mid–City Parking, Inc.,* 332 B.R. 798 803 (Bankr.N.D.Ill.2005); and *Central Virginia Community College v. Katz,* 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006). Each of these cases presented by the Debtors are inapplicable to the case at bar.

In *Central Virginia Community College v. Katz,* 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006), the Supreme Court considered whether sovereign immunity is a valid defense to a bankruptcy court adversary action. While the Supreme Court recognized certain areas where state interests must defer to the *in rem* jurisdiction of bankruptcy courts, the Court's holding

---

**6.** The same analysis would also apply to the State Court's reassessment of the amount owed to BNY. The Plaintiffs are asking this Court to strike the judgment and relegate the claim to unsecured status. The Court cannot manipulate the amount of BNY's judgment without, "infringing upon the state court's act of entering a final judgment on a matter within its purview." *In re Blythe,* 413 B.R. 205, 214 (Bankr.E.D.Pa.2009).

**7.** The Plaintiffs also allege in a footnote that the Supreme Court's holding in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) severely eroded application of the *Rooker–Feldman* doctrine. *See* (Dkt. # 117, Adv. No. 08–02029JAD, 2 n. 2). For the purpose of addressing this argument, the Court notes that following the Supreme Court decision in *Exxon,* courts have held that the "inextricably intertwined" factor continues to be a valid consideration with respect to the application of the Doctrine. *Madera v. Ameriquest Mortgage Co. (In re Madera),* 388 B.R. 586, 597 (E.D.Pa.2008), aff'd, 586 F.3d 228 (3d Cir. 2009). Further, the *Rooker–Feldman* doctrine has been applied by courts in this circuit several times since the *Exxon* decision to bar review of a judgment in mortgage foreclosure based on various claims. *See e.g., Knapper, supra; Holler v. Fairbanks Capital Corp. Serv. Ctr. (In re Holler),* 342 B.R. 212, 220 (Bankr. W.D.Pa.2006); and *Randall v. Bank One Nat'l Ass'n,* 358 B.R. 145 (Bankr.E.D.Pa.2006).

in *Katz* was limited to state compliance with orders and findings issued by the bankruptcy court *not* the bankruptcy court's treatment of pre-petition judgments entered in state court. *Id.* at 379, 126 S.Ct. 990. In this regard, *Katz* is simply inapplicable to the case at bar.

Both *Gruntz* and *Mid–City Parking* consider district court and/or bankruptcy court review of state court challenges to the automatic stay. Each Court recognizes that, "motions to terminate, annul, or modify the automatic stay" are "core" proceedings invoking substantive rights that "arise in" or "under" the Bankruptcy Code. 28 U.S.C. § 157 (2009). The courts further concluded, that because Congress has vested bankruptcy courts with exclusive jurisdiction over specific "core" proceedings, "collateral challenges to a state court's automatic stay determination are not forbidden by the *Rooker–Feldman* doctrine." *Mid–City Parking, Inc.,* 332 B.R. at 805 (*citing Gruntz,* 202 F.3d at 1083). However, the courts did *not* extend this exception to the *Rooker–Feldman* doctrine to enable collateral review of "non-core" matters. *Gruntz,* 202 F.3d at 1084.

In citing these three cases (*Mid–City Parking, Gruntz,* and *Katz*) the Debtors confuse the power of the bankruptcy court to enforce its own orders (or the statutory injunction of the automatic stay) with the power to disregard the findings of state courts with respect to the state courts' entry of pre-petition judgments. The former (i.e., ability to enforce orders and the automatic stay) appears to be conclusive, while the latter (i.e., the ability to set aside pre-petition judgments) is limited by the *Rooker–Feldman* Doctrine. *Id.* at 1083.

Because in this case the state court judgment in foreclosure was entered *prior* to the initiation of the bankruptcy there was no violation of the automatic stay or other bankruptcy provisions with respect to its entry. The Court's ability to have a collateral review of those judgments is therefore limited.

While 28 U.S.C. § 1334 does give bankruptcy courts jurisdiction over civil actions "arising in or related to cases under title 11" it does not give this Court the unfettered power to collaterally review all state court judgments.[8] The Debtors' Complaint is based solely on state law assertions and does not assert rights that arise in or under any provisions in the Bankruptcy Code. Therefore, the *Rooker–Feldman* doctrine applies divesting this Court of jurisdiction over the Debtors' Complaint. Dismissal of the adversary proceeding as to BNY for lack of subject-matter jurisdiction is therefore appropriate and BNY's Motion to Dismiss will be granted on this basis. Because this Court lacks subject-matter jurisdiction over the claims made against BNY, it is unnecessary for this Court to address BNY's remaining grounds for dismissal. *Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir.1996).

### III.

In rendering its decision today, the Court is mindful of Bankruptcy Judge McCullough's relief from stay order dated June 13, 2006. While the Debtors' Complaint is difficult to follow, the Debtors' appear to assert that Judge McCullough's June 13, 2006 Order can be used in some offensive fashion to set aside BNY's state court judgment(s). This Court disagrees.

---

**8.** This is not to say that state court judgments in cases falling within the *exclusive jurisdiction* of the federal courts are not subject to collateral attack. For a discussion on the specific Bankruptcy Code provisions that em- power bankruptcy courts to set aside state court judgments, *see In re Knapper,* 407 F.3d 573, 583 n. 22 (3d Cir.2005) (*citing In re Gruntz,* 202 F.3d 1074 (9th Cir.2000)). None of those exceptions apply to the case at bar.

The June 13, 2006 Order merely lifted the automatic stay to permit BNY to litigate title issues with respect to the mortgages in the state courts. The Order was permissive in nature in that its terms did not expressly require BNY to commence any litigation in state court to set aside its own mortgage instrument. In fact, with BNY already having a judgment in mortgage foreclosure, the Court can discern of no rational basis for requiring BNY to essentially commence a lawsuit against itself.

Rather, to the extent that the mortgage at issue was defective, it was incumbent upon the Debtors to petition to open or strike the judgment entered against them if they had bona fide defenses to the mortgage foreclosure action. The Debtors, however, sat idly by and did nothing. Not only did they do nothing with respect to the initial foreclosure judgment, they also ignored the *Motion for Reassessment of Damages,* which was granted by the Court of Common Pleas of Washington County on June 15, 2007. Under these circumstances, the Court is not persuaded that Judge McCullough's order of June 13, 2006 affords this Court with the subject-matter jurisdiction to adjudicate the Debtors affirmative claims against BNY.[9]

### IV.

For the reasons set forth above, this Court concludes that it lacks subject-matter jurisdiction to adjudicate the Debtors' cause of action against BNY. For this reason, BNY's *Motion to Dismiss* will be granted. An appropriate Order shall be entered.

### ORDER DISMISSING COMPLAINT AS TO DEFENDANT BANK OF NEW YORK

AND NOW, this **17th** day of **November, 2009,** the Court having heard the Bank of New York's *Motion to Dismiss the Debtors' Complaint,* and in due consideration of the opposition thereto filed by the Debtors, the Court hereby **FINDS, ORDERS, ADJUDGES** and **DECREES** as follows:

1. For the reasons stated in the Memorandum Opinion issued by the Court contemporaneously herewith, the Court lacks proper subject-matter jurisdiction over the causes of action asserted by the Debtors' against the defendant Bank of New York.

2. As such, the *Motion to Dismiss* is **GRANTED** and the causes of action filed by the Debtors against the Bank of New York are therefore dismissed without prejudice for want of subject-matter jurisdiction.

3. Because the Court lacks proper subject-matter jurisdiction over the claims made by the Debtors' against the Bank of New York, the Court declines to address the merits of the remaining substantive defenses asserted by the Bank of New York in its *Motion to Dismiss.* To the extent necessary, these remaining sub-

---

9. This finding or conclusion does *not* contradict this Court's earlier denial of the motion to dismiss filed by CIT Consumer Group, ("CIT"). In that instance, the Court was not asked, and did not find, that any of the orders entered by Judge McCullough afforded this Court with subject-matter jurisdiction over the affirmative causes of action asserted by the Debtors. Rather, the sole issue determined by the Court with respect to CIT's motion to dismiss was whether the allowance of CIT's claims in the Debtors' prior chapter 7 case had some preclusive effect on the Debtors' adversary proceeding. The Court concluded that the deemed allowance of those claims had no preclusive effect whatsoever under the unique facts and circumstances of this case. This Court also expressly noted that its decision was not a finding, either positively or negatively, with respect to any impact that a state court foreclosure judgment may have on this litigation.

stantive basis of the *Motion to Dismiss* are denied, without prejudice, for want of proper subject-matter jurisdiction.