## Everbank v. Fischer

C.P. of Lancaster County, No. CI-11-14283.

*Heidi R. Spivak*, for plaintiff.
*Gary G. Krafft*, for defendant.

ASHWORTH, *J.*, April 16, 2012—Before the court for consideration are the preliminary objections of plaintiff Everbank s/i/i/t Everhome Mortgage Company to the new matter and counterclaim of defendant Melinda L. Fischer n/b/m Melinda L. Scott ("Scott"), filed in response to the complaint in mortgage foreclosure. For the reasons set forth below, these objections will be overruled in part and sustained in part.

## I. Background

On February 23, 1994, defendants Brad Fischer and his then wife, Melinda Scott, executed and delivered to GMAC Mortgage Corporation of PA a mortgage upon the property at 237 South West End Avenue, Lancaster, Pennsylvania (the property). (See complaint at ¶ 4.) This

mortgage was duly recorded in the office of the recorder of Deeds in and for Lancaster County on February 23, 1994. (*Id.*) The mortgage was payable in monthly installments and granted plaintiff the right to accelerate the entire balance due during any default by defendants. (*Id.* at ¶ 14.) On December 14, 2007, the mortgage was assigned to Everhome Mortgage Company, by assignment recorded in the office of the recorder of Deeds of Lancaster County. (*Id.* at ¶ 5.)

Plaintiff avers that in 2009 three federal tax liens totaling $28,426.83 were filed against the property. (See complaint at ¶¶ 6-11.) Beginning in June 2011, defendants allegedly failed to make the monthly payments required by the mortgage. (*id.* at ¶ 14.) In accordance with act 91 of 1983 (the "Homeowners Emergency Assistance Act"), a combined notice providing the information required by § 403 of act no. 6 of 1974, and act 91, was sent to defendants' last known address by certified mail, return receipt requested. (*Id.* at ¶ 16). As of December 6, 2011, the principal balance due plaintiff was $151,860.01. (*Id.* at ¶ 15).

As a result of defendants' alleged default, plaintiff filed a complaint in mortgage foreclosure pursuant to Pa. R.C.P. 1141, et seq., against defendants on December 6, 2011, seeking judgment in rem against defendants for foreclosure and sale of the mortgaged premises. In the complaint, plaintiff avers that the amount due is $157,124.55, which includes interest on the principal amount since the date of default, fees billed, and attorney's fees associated with the

default. (See complaint at ¶ 15.) Plaintiff's demand is for this amount due plus interest and costs and "foreclosure and sale of the mortgaged property."

Defendant Scott filed a timely answer denying (1) that she is a mortgagor and/or real owner of the South West End Avenue property (see defendant's answer at ¶ 3), (2) that any principal exceeding the original mortgage amount of $90,250 is due and owing (*Id.* at ¶ 4), (3) that any federal tax liens were filed against her (*Id.* at ¶¶ 6-11), and (4) receipt of any foreclosure notices. (*Id.* at ¶ 16.) Defendant Scott's new matter asserts that in 1998 defendants Fischer and Scott separated, and Scott permanently vacated the property at 237 South West End Avenue. (See defendant's new matter at ¶ 19.) Defendant Scott further avers that on March 11, 1999, September 11, 2000, and December 10, 2010, defendant Fischer unilaterally entered into loan modification agreements to modify the mortgage and the underlying note, in each case increasing the principal amount and monthly payment, and extending the mortgage's maturity date. (*Id.* at ¶¶ 20-24, 26-29, 47-48, 51-52.) Defendant Scott states that she was unaware of these loan modifications and was not a party to them. Consequently, she contends she was released from the promises, debts and duties of the mortgage and note. (*Id.* at ¶¶25, 31-35.)

Defendant Scott further asserts in her new matter that on October 3, 2007, plaintiff filed a complaint in mortgage foreclosure against defendants in the court of common pleas of Lancaster County, docketed at No. CI-07-10081.

(See defendant's new matter at ¶ 40.) In response to that first foreclosure action, defendant Scott filed an answer denying knowledge of the 1999 and 2000 loan modification agreements entered into by her then husband, defendant Fischer. (*Id.* at ¶ 42.) She also included counterclaims against plaintiff for common law fraud (concealment) and unfair business practices. (*Id.* at ¶ 43.)

On December 15, 2009, plaintiff filed a consent judgment executed by plaintiff and defendant Scott. (See defendant's new matter at ¶ 44.) Through the consent judgment, plaintiff obtained an in rem judgment against defendant Scott and agreed not to pursue defendant Scott for any deficiency after the property, which is subject to the mortgage, is sold at Sheriff's sale. (*Id.* at ¶ 45.) On April 14, 2010, an in rem judgment against defendant Fischer was entered following plaintiff's motion for summary judgment. (*Id.* at ¶ 46.)

Thereafter, plaintiff again modified the loan through an agreement with defendant Fischer on December 10, 2010. (See defendant's new matter at ¶ 47.) Defendant Scott did not participate in, nor was she aware of, the 2010 agreement. (*Id.* at ¶ 48.) On May 17, 2011, following plaintiff's motion, the consent judgment against defendant Scott and the judgment against defendant Fischer were vacated and the initial foreclosure was discontinued without prejudice. (*Id.* at ¶ 54.)

Based upon these averred facts, defendant Scott contends in her new matter that plaintiff's claims are barred by the doctrines of unclean hands, release,

consent, accord and satisfaction, waiver, laches, estoppel, immunity, justification, privilege, failure of consideration, and illegality, as well as the fraud and misrepresentation of plaintiff.

In her counterclaim, defendant Scott seeks relief on three grounds. She avers that plaintiff: (1) engaged in common law fraud (concealment) when it negotiated and executed the 1999, 2000, and 2010 loan modification agreements without her consent or participation; (2) violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S.A. ¶¶ 201-1 — 201.9.3, based upon the unfair and deceptive acts that created a likelihood of confusion regarding material changes to the mortgage; and (3) engaged in defamatory action by reporting to various credit reporting and monitoring agencies from December 15, 2009, through May 17, 2011, while the consent judgment was effective, that the principal balance on the mortgage was overdue and owed by defendant Scott personally. (See defendant's counterclaim, counts I-III.) Defendant Scott's counterclaim seeks rescission of the mortgage, the underlying note, and the 1999, 2000, and 2010 loan modification agreements to defendant Scott, and monetary damages, including treble, compensatory and punitive damages, and attorney's fees.

Plaintiff's preliminary objections are in the nature of a demurrer to defendant Scott's counterclaim, seeking to strike the counterclaim as being violative of rules 1141, 1148 and 1028(a)(2) & (4). Further, plaintiff objects to the legal insufficiency of defendant's new matter and seeks to

strike it.

## II. Discussion

### A. Defendant's Counterclaim

Counterclaims in mortgage foreclosure actions are governed by Pennsylvania rule of civil procedure 1148 which provides: "A defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose." Pa. R.C.P. 1148; see also *Green Tree Consumer Discount Co. v. Newton*, 909 A.2d 811, 814 (Pa. Super. 2006) (citing Pa. R.C.P. 1148). Under this rule,

> [t]he claim must now arise, in some manner, from the *mortgage relationship*. A counterclaim could be filed, for example, for damages and for breach of warranty of title to the mortgaged premises.... Also, it has been held that defendant may counterclaim for the balance due from plaintiff on a construction contract in connection with which the mortgage was given.... On the other hand, a counterclaim could not be filed for professional services rendered by the mortgagor to the mortgagee, at least if unrelated to the mortgagee....

*Mellon Bank, N.A. v. Joseph*, 267 Pa. Super. 307, 317, 406 A.2d 1055, 1060 (1979) (quoting 3 Goodrich-Amram 2d § 1148:1 at 488 (emphasis supplied) (internal citations omitted)). The courts in Pennsylvania have repeatedly refused to entertain counterclaims that do not specifically pertain to facts that were part of, or incident to, the

creation of the mortgage. See *Cunningham v. McWilliams*, 714 A.2d 1054 (Pa. Super. 1998); *Chrysler First Business Credit Corp. v. Gourniak*, 411 Pa. Super. 259, 601 A.2d 338 (1992); *Overly v. Kass*, 382 Pa. Super. 108, 554 A.2d 970 (1989); *Mellon Bank N.A. v. Joseph*, 267 Pa. Super. 307, 406 A.2d 1055 (1979).

In Pennsylvania, the viability of a mortgage foreclosure action depends upon the existence of a valid mortgage. *In re Madera*, 586 F.3d 228, 232 (3rd Cir. 2009)). See also *In re Calabria*, 418 B.R. 862, 866-867 (W.D. Pa. 2009) ("In Pennsylvania, actions in mortgage foreclosure are dependent on the existence of a valid mortgage. Without a valid mortgage, there is simply nothing to foreclose upon."); *In re Randall*, 358 B.R. 145, 158 (E.D. Pa. 2006) (same). Not unlike other written instruments, mortgages are governed by the law of contracts and interpreted accordingly. See *Second Federal Savings and Loan Association v. Brennan*, 409 Pa. Super. 581, 586, 598 A.2d 997, 999 (1991). It is a fundamental precept of contract law that if a party is fraudulently induced to enter into an agreement (i.e., "but for" fraudulent misrepresentation(s) the contract would not have been executed by the innocent party), the agreement is void or voidable at the option of the injured party. *Youndt v. First National Bank of Port Allegheny*, 868 A.2d 539, 546 (Pa. Super. 2005); *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. 2002), appeal denied, 573 Pa. 714, 828 A.2d 349 (2003); *1726 Cherry Street Partnership v. Bell Atlantic Properties Inc.*, 439 Pa. Super. 141, 148-150, 653 A.2d 663, 667-668 (1995), appeal denied, 544 Pa. 647, 664 A.2d 976 (1995).

Therefore, if borrowers raise factual issues regarding fraud in the inducement in conjunction with the formation of the mortgage, they have asserted a valid defense to the foreclosure. See *Green Tree*, 909 A.2d at 814 (fraud in the inducement of a mortgage is a permissible counterclaim under rule 1148 in a mortgage foreclosure action); *Cunningham*, 714 A.2d at 1056 ("Thus, a counterclaim in a foreclosure action is cognizable if it alleges fraud in the inducement to the mortgage...."); *In re Randall*, 358 B.R. at 157 (mortgagors can properly defend in rem foreclosure proceedings by demonstrating that the mortgage is void due to fraud). Here, plaintiff is suing under the mortgage as it has been amended pursuant to the 1999, 2000 and 2010 loan modification agreements. Two of defendant Scott's three counterclaims allege that the mortgage was amended in a fraudulent manner. As a result, these counterclaims are directly related to the existence and validity of the mortgage and are permissible and proper under rule 1148.

Defendant Scott's first counterclaim alleges common law fraud (concealment) by plaintiff and plaintiff's assignor when it negotiated and executed the 1999, 2000 and 2010 loan modification agreements without defendant Scott's consent or knowledge. Specifically, on March 11, 1999, defendant Fischer is alleged to have unilaterally entered into a loan modification agreement with the then current lender, Dovenmuehle Mortgage Company, LP, to modify the mortgage and the mortgage's underlying note. (See defendant's new matter at ¶ 20.) The 1999 agreement resulted in an increase in the principal amount and monthly

payment of the mortgage and extended the mortgage's maturity date by five years. (*Id.* at ¶ 21.) In its opening paragraph, the 1999 agreement redefines "Borrower," for purposes of the mortgage, as only defendant Fischer and does not include defendant Scott. (*Id.* at ¶ 22.) The signature area of the 1999 agreement shows that the name "Melinda L. Fischer" was originally placed below one of the signature lines for the "Borrower" but was subsequently deleted by the preparer of the 1999 agreement by typing numerous uppercase Xs over "Melinda L. Fischer." (*Id.* at ¶ 23.) Defendant Scott claims to have been unaware of the 1999 agreement at the time it was negotiated and executed. She claims she was not a party to it. (*Id.* at ¶ 25.)

Similarly, on September 11, 2000, defendant Fischer unilaterally entered into another loan modification agreement with Dovenmuehle mortgage to modify the mortgage and the underlying note. (See defendant's new matter at ¶ 26.) The 2000 agreement modified the mortgage by substantially increasing the principal, interest rate, and monthly payments, and extending the maturity date. (*Id.* at ¶ 27.) The signature area of the 2000 agreement for the "Borrower" provided only for the signature of defendant Fischer. Defendant Scott was not intended to be and was not a party to the 2000 agreement. (*Id.* at ¶¶ 28-29.) Defendant Scott claims to have been unaware of the 2000 agreement at the time it was negotiated and executed and she claims she was not a party to it. (*Id.* at ¶ 31.)

The 1999 and 2000 loan modification agreements ultimately raised the original principal by $9,076.34, the

yearly interest rate by almost a full percentage point, and monthly payments by $124.97. (See defendant's new matter at ¶ 38; see also defendant's counterclaim, count I at ¶ 73.) These agreements also extended the original maturity date of the mortgage by six years. (See defendant's counterclaim, count I at ¶ 74.)

On December 10, 2010, plaintiff again modified the mortgage through an agreement with defendant Fischer. (See defendant's new matter at ¶ 47.) As before, defendant Scott did not participate in, nor was she aware of, the 2010 agreement; the phrase "divorce decree on record" having been handwritten on the signature line for defendant Scott's signature. (*Id.* at ¶48.) The 2010 agreement substantially raised the principal amount by an additional $53,744.95 over the principal amount set by the 1999 and 2000 loan modification agreements. (*Id.* at ¶ 51.) The 2010 agreement also substantially extended the maturity date until the year 2047. (*Id.* at ¶ 52.)

These allegations in defendant Scott's new matter and count I of her counterclaim clearly relate to the existence and validity of the mortgage and will be permitted.

Defendant Scott's second counterclaim alleges violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq. Specifically, defendant Scott restates much of the content of the previous counterclaim, that is, that plaintiff fraudulently modified the original mortgage and note without her knowledge and consent. (See defendant's counterclaim, count II at ¶¶ 84-87.) By increasing the

principal and extending the maturity date of the original mortgage, plaintiff's three loan modification agreements allegedly damaged defendant Scott's creditworthiness and purportedly increased her personal liability in an amount in excess of $62,821.29, without her knowledge and consent. (*Id.* at ¶¶ 88-89.) Again, the allegations in this counterclaim relate to the modification of the mortgage at issue and the terms contracted for at the original signing of the mortgage. Accordingly, this counterclaim must be permitted.

Defendant Scott avers in her third counterclaim that "[f]rom December 15, 2009, through May 17, 2011, while the consent judgment was effective, Scott was not personally liable for the principal amount of the loan secured by the mortgage," and that "[n]evertheless... Plaintiff continued to report the principal balance as being overdue and owed by Scott, personally, to various credit reporting and monitoring agencies" thus, defaming her good name. (See defendant Scott's counterclaim, count III at ¶¶ 91, 93.) The cause of action raised in this counterclaim concerns actions taken by the lender after an alleged default by defendants and resulting litigation. This is the type of counterclaim that is not cognizable under Rule 1148 because it clearly is not "part of or incident to the creation of the mortgage itself." See *Gourniak*, 411 Pa. Super. at 266, 601 A.2d at 342. Accordingly, this counterclaim must be dismissed.

The Rule governing counterclaims in actions of mortgage foreclosure is designed to further the policy of

resolving the entire controversy in one action rather than compelling the defendant to pursue his or her remedy by a separate action. *Provident Nat. Bank v. Eckhardt*, 12 D.&C.3d 243, 245 (Bucks Co. 1979) (citing *Roth v. Golden Slipper Restaurant & Catering, Inc.*, 167 Pa. Super. 558, 559, 76 A. 2d 475, 477 (1950)). A counterclaim in a mortgage foreclosure action that is factually tied up with the mortgage and the default thereon is a practical application of Rule 1148 governing counterclaims, and an example of judicial economy. *Peoples Savings Ass'n v. Whallin*, 14 D.&C.3d 136, 138-39 (Butler Co. 1980) (*disapproved of on other grounds by, Newtown Village Partnership v. Kimmel*, 424 Pa. Super. 53, 621 A.2d 1036 (1993)). In the instant case, a determination of whether the plaintiff lender acted fraudulently in modifying the mortgage contract upon which these foreclosure proceedings are based is consistent with the policy of the courts to resolve an entire controversy in one action, and serves the interests of judicial economy. Separate proceedings would clearly involve a substantial duplication of effort.

Accordingly, plaintiff's preliminary objections in the nature of a demurrer to counts I and II of defendant Scott's counterclaim are overruled. The objection to count III of the counterclaim is sustained.

B. Defendant's New Matter

Plaintiff has also objected to the legal sufficiency of defendant Scott's new matter. For the reasons set forth above, the objection to defendant's new matter is overruled.

### III. Conclusion

For the reasons set forth above, plaintiff's preliminary objections in the nature of a demurrer to defendant's counterclaims will be overruled in part and sustained in part.

Plaintiff's preliminary objection to defendant's new matter will be overruled. Accordingly, I enter the following:

### ORDER

And now, April 16, 2012, upon consideration of the preliminary objections of plaintiff Everbank s/i/i/t Everhome Mortgage Company to the new matter and counterclaims of defendant Melinda L. Fischer n/b/m Melinda L. Scott, it is hereby ordered that said preliminary objections are sustained in part and overruled in part as follows:

1. Plaintiff's preliminary objection in the nature of a demurrer to count I of defendant's counterclaim is overruled;

2. Plaintiff's preliminary objection in the nature of a demurrer to count II of defendant's counterclaim is overruled;

3. Plaintiff's preliminary objection in the nature of a demurrer to count III of defendant's counterclaim is sustained; and

4. Plaintiff's preliminary objection in the nature of a demurrer to defendant's new matter is overruled.

It is further ordered that plaintiff shall have twenty days from the date of this order to file an answer to defendant's answer, new matter and counterclaims.