601 A.2d 338

CHRYSLER FIRST BUSINESS CREDIT CORP.

v.

James M. GOURNIAK, Andrea R. Gourniak
and the United States of America.

Appeal of: James M. GOURNIAK and Andrea R. Gourniak.

Superior Court of Pennsylvania.

Argued Nov. 21, 1991.

Filed Jan. 6, 1992.

260

Keith R. Pavlack, Philadelphia, for appellant.

Samuel A. Scott, Macungie, for appellees.

Before CAVANAUGH, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the order striking appellants', James and Andrea Gourniak's, new matter and counterclaims in a mortgage foreclosure action. Appellants contend that the trial court erred in finding that their new matter and counterclaims were not part of or incident to the underlying mortgage and thus improperly pled under Rule 1148 of the Rules of Civil Procedure. For the following reasons, we affirm.

On August 20, 1990, Appellee, Chrysler First Business Credit Corporation ("Chrysler"), formerly BancAmerica Business Credit Corporation, filed a complaint in mortgage foreclosure against appellants, James and Andrea Gourniak, in the Court of Common Pleas of Lehigh County. The complaint alleged that on April 25, 1983, Chrysler loaned appellants over $62,000.00 in order that they may purchase from Chrysler the property known as RD # 3, Slatington, PA 18080. As security, appellants made, executed and delivered two notes and two mortgages to Chrysler as mortgagee on the above-mentioned property. Pursuant to the notes and mortgages, interest was to accrue beginning on June 10, 1983, and the first payment was due on the same date. The complaint alleged that at various times, payments were less than the required amount or were not made at all.

In May of 1985, appellants filed a petition in bankruptcy under Chapter 7. As a result, an automatic stay was imposed on all legal proceedings. Chrysler filed a motion to lift the stay in preparation for mortgage foreclosure on the above premises. On October 4, 1985, Chrysler and appellants entered into a stipulation with the approval of the bankruptcy court to re-commence payments on the mortgage and to stave off a foreclosure action. However, Chrysler's complaint alleged that after partial payment in

June 10, 1988, no further payments were made by appellants. As a result, pursuant to the notes and mortgages, Chrysler sought payment of the balance owed, interest, attorney's fees and other costs.[1]

In response to Chrysler's complaint, appellants filed an answer on October 19, 1990. In their answer, in the section entitled "New Matter," appellants alleged that Chrysler's, predecessor in interest, BancAmerica, contacted them for the purpose of hiring them to sand and refinish the floors of the farm house located at RD # 3, Slatington. Discussions and negotiations then ensued about appellants' purchasing the premises from BancAmerica.

Appellants alleged that they and BancAmerica then entered into an agreement of sale whereby BancAmerica agreed to finance not only the purchase of the Slatington premises but also the rehabilitation and conversion of the premises into apartments and the relocation and operation of appellants' sanding and refinishing business. Pursuant to this agreement, appellants made, executed and delivered two notes and two mortgages to BancAmerica, as mortgagee on the Slatington property. Appellants averred that Chrysler then succeeded to BancAmerica's position, knowing of the sale terms and operating under them.

Furthermore, appellants alleged that these terms were also adopted as part of the stipulation entered into during bankruptcy proceedings. However, appellants averred that neither BancAmerica nor Chrysler provided them with the necessary financing to rehabilitate the premises or operate their business, and as a result, they suffered economic and financial hardships, ending in their bankruptcy. Moreover, appellants alleged that Chrysler waited to foreclose on the property until appellants had substantially rehabilitated the premises with their own funds.

1. The United States of America was also made a defendant in the mortgage foreclosure action due to tax liens on the premises. Chrysler sought judgment against the United States for foreclosure and judicial sale of the RD # 3 Slatington premises.

Consequently, appellants asserted the affirmative defenses of fraudulent misrepresentation, estoppel, and laches.[2] In addition, appellants averred counterclaims of fraudulent misrepresentation, unjust enrichment and punitive damages.

On November 13, 1990, Chrysler filed preliminary objections in the nature of a motion to strike appellants' new matter and counterclaims on the grounds that the matters raised in them did not arise out of the mortgage transaction, and thus, were prohibited from being argued in this mortgage foreclosure action by Rule 1148 of the Rules of Civil Procedure.[3] On February 13, 1991, the trial court granted Chrysler's motion and ordered that appellants' new matter and counterclaims be struck. This timely appeal followed.

Appellants contend that the trial court erred in striking their affirmative defenses and counterclaims. Specifically, appellants argue that Rule 1148 of the Rules of Civil Procedure only governs counterclaims in mortgage foreclosure actions and thus does not pertain to affirmative defenses. In addition, appellants argue that all three of their counterclaims are part of or incident to the creation of the mortgage itself, and thus, comply with Rule 1148.

Preliminarily we note that jurisdiction over this matter was established by this court when, sitting en banc, we denied Chrysler's motion to dismiss the appeal on the grounds that the order appealed from was not final. Conse-

---

**2.** Appellants also alleged as affirmative defenses bankruptcy, and novation. However, at oral argument before this court, appellants' counsel explained that in arguing bankruptcy and novation, appellants were simply asserting that the representations alleged to have been made in the agreement for sale were carried over into the stipulation made during the bankruptcy proceedings. Argued in this manner, bankruptcy and novation are not defenses.

**3.** Rule 1148 of the Rules of the Civil Procedure provides that
[a] defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose.

quently, we can proceed directly to the merits of this case.[4]

The decision whether to sever a counterclaim lies within the discretion of the trial court. Pa.R.Civ.P. § 213(b). *See Overly v. Kass*, 382 Pa.Super. 108, 554 A.2d 970 (1989) (citing to *Kaiser v. Meinzer*, 272 Pa.Super. 207, 414 A.2d 1080 (1979), *appeal dismissed*, 498 Pa. 136, 445 A.2d 104 (1982)). Thus, the court's decision will not be overturned absent an abuse of that discretion.

■ Counterclaims in mortgage foreclosure actions are governed by Rule 1148 of the Rules of Civil Procedure, *supra*. This rule has been interpreted as permitting to be pled only those counterclaims that are part of or incident to the creation of the mortgage itself:

It [Rule 1148] restricts every defendant to claims which arise from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose.... No defendant may now set off a claim against the plaintiff simply because its nature is contractual or quasicontractual, as allowed in assumpsit actions. The claim must now arise, in some manner from the *mortgage relationship.* A counterclaim could be filed, for example, for damages for breach of warranty of title to the mortgaged premises [*cf. Wacker v. Straub*, 88 Pa. 32 (1878)]. Also, it has been held that defendant may counterclaim for the balance due from plaintiff on a construction contract in connection with which the mortgage was given [*Genel v. Vacca*, 39 Del.Co.Rep. 191 (1952)]. On the other hand, a counterclaim could not be filed for professional services rendered by the mortgagor to the mortgagee, at least if unrelated to the mortgage [*cf. Bechtel v. Green*, 17 Berks Co. L.J. 41 (1924)].

3 Goodrich–Amram 2d § 1148:1 at 488 (emphasis added). *See Meritor Sav. Bank v. Barone*, 399 Pa.Super. 213, 582 A.2d 21 (1990); *Mellon Bank, N.A. v. Joseph*, 267 Pa.Super. 307, 406 A.2d 1055 (1979). Furthermore, Rule 1148 must be

---

**4.** Because our review of the striking of appellants' counterclaims directly impacts upon our review of the striking of their affirmative defenses, we will address the striking of the counterclaims first.

interpreted narrowly. *McDowell Nat. Bank of Sharon v. Stupka,* 310 Pa.Super. 143, 456 A.2d 540 (1982); *Federal Land Bank of Baltimore v. Fetner,* 269 Pa.Super. 455, 410 A.2d 344, *cert. denied* 446 U.S. 918, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1979) (citing *Mellon Bank, N.A. v. Joseph, supra* ).

■ So interpreting Rule 1148, we find that the counterclaims asserted by appellants are not part of or incident to the creation of the mortgage itself.

In their first counterclaim, appellants assert fraudulent misrepresentation. They contend that they entered into the agreement to purchase the Slatington premises because of the representations of Chrysler that it would provide financing not only for the purchase of the Slatington premises, but also for the rehabilitation and development of the property and for the operation of appellants' business. Appellants allege that while Chrysler did provide funding to purchase the property, it did not finance the rehabilitation and development of the premises or the operation of appellants' business.

In essence, appellants are alleging that Chrysler did not provide future funding for purposes other than the purchase of the property. Similar allegations were made in *Overly v. Kass, supra.* In *Overly,* the Overlys agreed to sell their farm to the Kasses. In consideration for the agreement, the Kasses executed and delivered to the Overlys a note and purchase money mortgage. Later, the Kasses defaulted on the mortgage. When the Overlys brought an action in mortgage foreclosure, the Kasses counterclaimed alleging misrepresentation. They alleged that the Overlys misrepresented the amount of income and subsidies that the property would generate and the structures that would be removed from the premises. The trial court struck the Kasses' counterclaim on the basis that it was not part of or incident to the mortgage. This court affirmed, holding that:

> [t]he mortgage is an interest in the mortgaged property created by a written agreement providing for a security

for the payment of a debt or an obligation. None of the facts alleged by the Kasses deals even remotely with the creation of that security interest; rather, they deal with the agreement between the buyers and the sellers of the property. Accordingly, the Kasses' counterclaim does not arise as part of, or incident to, the creation of the mortgage.

*Overly v. Kass*, 382 Pa.Super. at 115, 554 A.2d at 974.

Here, as in *Overly*, the alleged promises of future financing for rehabilitation of the property and for operation of appellants' business are not part of or incident to the creation of the security interest. Instead, they pertain to the agreement of sale between appellants and Chrysler made prior to the mortgage. As a result, the trial court did not abuse its discretion in striking this counterclaim.

■ Appellants' second counterclaim alleges unjust enrichment. Appellants assert that Chrysler waited to foreclose on the appellants' property until after appellants had substantially rehabilitated the premises, and hence, until after the value of the property was increased. As a result, appellants contend that Chrysler would be unjustly enriched by the foreclosure. This counterclaim is also not part of or incident to the creation of the mortgage because the alleged facts giving rise to this counterclaim occurred *after* the parties were in default of the mortgage. Such a counterclaim cannot be asserted in a mortgage foreclosure action. *See Mellon Bank, N.A. v. Joseph, supra.*

■ Finally, appellants' third counterclaim asserts a claim for punitive damages. Specifically, appellants allege that because of the misrepresentations made and the fact that Chrysler waited to foreclose, appellants suffered financial setbacks resulting in their filing for bankruptcy. Therefore, due to this willful disregard for appellants' rights and interests, appellants contend that punitive damages are in order. However, the punitive damages sought by appellants are the result of the facts alleged in the two preceding counterclaims, which we find are not part of or

incident to the creation of the mortgage. Thus, the court did not abuse its discretion in striking this counterclaim as well.

In addition to striking appellants' counterclaims, the trial court struck appellants' affirmative defenses of fraudulent misrepresentation, estoppel, and laches based on the requirements of Rule 1148. We agree with appellants that Rule 1148 does not govern the pleading of new matter. However, it is apparent from the record that the trial court found appellants' affirmative defenses to be nothing more than restatements or continuations of their counterclaims. We agree. To allow appellants to bring such defenses would circumvent the purpose of Rule 1148. Accordingly, we affirm the trial court's striking of appellants' counterclaims and affirmative defenses.

Affirmed.