**Barter v. Southmoore Golf Course Associates L.P.**

C.P. of Northampton County, no. 1998-C-294.

*Donald LaBarre Jr.* and *Malcolm Gross,* for plaintiff.
*Charles Bruno,* for defendant.

BARATTA, *J.,* December 30, 1999—

## STATEMENT OF REASONS

This case involves a golf course owned by Southmoore Limited Partnership, whose general partner is a corporation known as Southmoore Golf Associates Inc. SGAI owns 98.25 percent of Southmoore's limited partnership interest. Plaintiff, Peter Barter, owns 55 percent of the stock in SGAI; however, because of its structure, Barter has never been permitted to vote his shares. Arcangelo Diodoardo and his wife control SGAI in that they own all voting shares of that corporation.

Barter filed a mortgage foreclosure action against Southmoore Golf Course Associates L.P. on January 14, 1998. Barter had provided financing to Southmoore in the form of four separate loans. These loans were evidenced by four separate notes which, as of January 14, 1998, carried a balance of $4,428,612.72. The loans were secured by four mortgages from Southmoore. Barter contended that Southmoore had failed to make timely installment payments on the notes including the May,

June, July, August and the October 1997 payments. Southmoore answered and filed new matter denying that the balance claimed was due on those dates. It asserted that the balance was instead due June 1, 1999 (Southmoore answer 18(a)), and that it was not required to make the October 1997 payment and other earlier payments because Barter had waived those payments. (Southmoore answer 18(b).)

Southmoore also filed an 11-count counterclaim against Barter. Barter filed preliminary objections to all of the counterclaims.

On December 9, 1998, this court sustained Barter's preliminary objections and struck all of Southmoore's counterclaims. The court's statement of reasons accompanying its order indicated that because Southmoore's claims were not part of the creation of Barter's security interest in the property, they were barred under Pa.R.C.P. 1148. Rule 1148 limits counterclaims in a mortgage foreclosure to matters which arise in the same transaction as the foreclosure instrument itself.

Southmoore then repleaded its initial answer and new matter, asserting that "the entire remaining balance due under the loan agreements is not due and payable until June 1, 1999." (Southmoore's new matter 50.)

On February 2, 1999, Barter filed his first amended complaint in the foreclosure action. In his first amended action, Barter additionally contended that Southmoore had failed to pay real estate taxes on the mortgaged property before interest or penalties become due. (Count II.) Barter's first amended complaint also contended that Southmoore had breached its mortgage terms by failing to comply with an order of the zoning hearing board of Moore Township. As a result, Barter contended that

Moore Township had filed an equity action against the property on September 28, 1998, seeking an injunction and other relief. (Count III.) Finally, Barter contended that on October 28, 1998, in violation of the mortgages, Southmoore granted an additional mortgage on the secured property to a corporation known as Lehigh Valley PIC, thereby creating additional liens on the property. (Count IV.)

On March 4, 1999, Southmoore filed its answer with new matter to the first amended complaint. Once again, Southmoore's answer with new matter contained no allegations that Barter's earlier complaint had interfered with its refinancing. Southmoore again confirmed, for the third time in its pleadings, that the mortgages were due June 1, 1999. (Answer and new matter 19(a).)

On June 4, 1999, Barter filed his second amended complaint reasserting his previous claims and adding a Count V. Count V asserted that the entire mortgage balance, then $4,637,866, was due on June 1, 1999. Barter also pleaded that the balance had not been repaid on that date. On June 28, 1999, Southmoore filed its answer with new matter to the second amended complaint. In its answer and new matter, Southmoore raised a new defense contending that the filing of the first mortgage foreclosure action by Barter had rendered Southmoore unable to obtain financing. Southmoore also raised the defense of waiver and reiterated several equitable defenses that had been stricken in our order of December 9, 1998. Finally, Southmoore contested the total monies due, alleging that Barter's calculation, which included attorney's fees, was incorrect.

## I. *Legal Standard*

Summary judgment is granted properly where no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2; *O'Brien Energy Systems Inc. v. American Employers' Insurance Co.,* 427 Pa. Super. 456, 629 A.2d 957 (1993). Summary judgment is appropriate only in those cases which are clear and free from doubt. *Lyman v. Boonin,* 535 Pa. 397, 635 A.2d 1029 (1993); *Musser v. Vilsmeier Auction Co. Inc.,* 522 Pa. 367, 370, 562 A.2d 279, 280 (1989). The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Ertel v. Patriot-News Co.,* 544 Pa. 93, 98-99, 674 A.2d 1038, 1041 (1996). In an action for mortgage foreclosure, the entry of summary judgment is proper if the mortgage is in default and that the recorded mortgage is in the specified amount. This is so, even if the mortgagor does not admit the total amount of the indebtedness. See *Landau v. Western Pennsylvania National Bank,* 445 Pa. 217, 225-26, 282 A.2d 335, 340 (1971). See also, 22 Standard Pennsylvania Practice 2d 121:69. With this legal standard in mind, we will now address Barter's motion.

## II. *Discussion*

In Southmoore's previous answers, Southmoore asserted as a defense that the indebtedness was not due until the date of the balloon payment, June 1, 1999. In its most recent answer, Southmoore now denies that the balloon payment was due on June 1, 1999.

In support of this reversal of position, the defendant raises the defense of waiver alleging that, at various times, Barter waived monthly payments due under the loans during the calendar years of 1996 and 1997. Those monthly payment waivers were acknowledged by Barter in written letters. Clearly, those waivers were not a waiver of the principal sum due and owing on June 1, 1999. As a matter of fact, the written correspondence at issue was attached to defendant's answer. In those letters, Barter waived certain monthly principal payments but asserted his desire to enforce the June 1, 1999 balloon payment and reserved his right to exercise his legal remedies under the terms of the loan documents. Therefore, the written documentation offered by defendant in support of its waiver defense contradicts its argument that the June 1, 1999 balloon payment was waived.

Additionally, each mortgage contains the following paragraph:

"Any failure by mortgagee to insist upon strict performance by mortgagor of any of the terms and provisions of this mortgage or of the note shall not be deemed to be a waiver of any of the terms or provisions of the mortgage and note, and mortgagee shall have the right thereafter to insist upon strict performance by mortgagor of any and all of them." [1]

Thus, the very terms of the written mortgages prevent the defendant from attempting to use the good graces of the plaintiff in waiving monthly principal payments as

---

1. This paragraph is numbered 20(b) in the mortgages dated June 1, 1995 and September 26, 1995. It is numbered 23(b) in the mortgages dated February 18, 1994 and February 1, 1996.

construing a waiver of the balloon payment due June 1, 1999.

The remaining waiver evidence offered by the defendant is the deposition testimony of Arcangelo Diodoardo, who is the controlling shareholder of Southmoore Golf Associates Inc., and as a result, Southmoore.

In his deposition, Diodoardo asserts the self-serving statement that Barter verbally assured him at various times that he would not pursue foreclosure. Apparently, Diodoardo's position is that Barter's alleged verbal statements serve as a waiver of his right to enforce his mortgages and collect the $4,428,612.72 owed to him by the defendant.

The defendant's claims of oral waiver contradict the following paragraph contained in each mortgage:

"*Amendment.* This mortgage cannot be changed or amended except by agreement in writing signed by the party against whom enforcement of the change is sought."[2]

Clearly, the mortgages do not permit parol evidence to modify the terms of the mortgages. Such evidence would be inadmissible at trial.

As a matter of law, we find that Barter has not waived his right to enforce the payment terms of the mortgages.

The remaining defenses are in the nature of equitable defenses such as laches, bad faith, breach of a fiduciary duty, unclean hands, etc. The factual support of these equitable defenses is Southmoore's claim that Barter, by prematurely filing the foreclosure action in January of

---

2. This paragraph is numbered 25 in the mortgages dated June 1, 1995 and September 26, 1995. It is numbered 28 in the mortgages dated February 18, 1994 and February 1, 1996.

1998, created a perception in the lending community that the defendant was not creditworthy, thereby sabotaging any attempts by Southmoore to obtain refinancing. Additionally, the defendant claims that Barter was in a "unique position" and owed a fiduciary duty to Southmoore. The defendant alleges that Barter breached his fiduciary duty.

Southmoore refers to Barter as being the majority shareholder because he owned a 55 percent equity interest in SGAI and holds mortgages encumbering the golf course. As a result, Southmoore claims that Barter owes a fiduciary duty. However, we dismiss these assertions as ridiculous because Diodoardo solely controls the corporation due to the fact that he and his wife own *all* of the voting shares in SGAI. By contrast, Barter owns only nonvoting shares in SGAI and has no ability to exert any control over its corporate affairs. Consequently, we find that, as a result of Diodoardo's sole control over the corporation, it is he who owes a fiduciary duty to Southmoore, Barter and the other non-voting shareholders.

Thus, we reject the claim that Barter owed a fiduciary duty to Southmoore.

Further, we find that the other defenses raised in new matter reiterate the counterclaim defenses that were stricken in our previous order. These defenses do not arise from the same transaction or occurrence from which Barter's cause of action arose. The claims contained in the new matter are not part of or incident to the mortgages because they do not deal with the creation of the security interest in the property. All of the allegations and defenses in the new matter arose or occurred a significant period after the creation of the mortgages and

are unrelated to the actual creation of the security interest. Therefore, under Pennsylvania Rule of Civil Procedure 1148, they are barred and cannot be asserted in the foreclosure action. See *Cunningham v. McWilliams,* 714 A.2d 1054 (Pa. Super. 1998), *appeal denied,* 557 Pa. 653, 734 A.2d 861 (1999); *Chrysler First Business Credit Corp. v. Gourniak,* 411 Pa. Super. 259, 601 A.2d 338 (1992).

Accordingly, we find that there are no material issues of fact. The record establishes that the mortgages at issue became due and owing on June 1, 1999. There is no dispute that the defendant has failed to satisfy those mortgages and is in default. Further, we find that as a matter of law, there are no defenses available to Southmoore.

Therefore, plaintiff is entitled to summary judgment.

## ORDER

And now, December 30, 1999, the amended motion for summary judgment filed on behalf of the plaintiff, Peter Barter, is granted.